**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| ROGELIO CARDOSO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-04-1212-L |
| | ) | |
| WARDEN SAM CALBONE, TANYA | ) | |
| VANWEY, GREG COURTNEY, JEREMY | ) | |
| DAVIS, JEWEL BEASLEY, RUSSELL | ) | |
| STEWART, TRAVIS SMITH, JOE | ) | |
| SPRUIELL, HORACE ALEXANDER, | ) | |
| MELINDA GUILFOYLE, and RON WARD, | ) | |
| | ) | |
| Defendants. | ) | |

**SUPPLEMENTAL REPORT AND RECOMMENDATION**

Plaintiff, a state prisoner appearing *pro se* and *in forma pauperis*, has filed an Amended Complaint in this 42 U.S.C. § 1983 action alleging violations of his federal constitutional rights.[1] The matter has been referred for further proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). Pending before the Court are two motions. Defendants Ward and Guilfoyle (DOC Defendants) have filed a Motion to Dismiss Amended Complaint/ Motion for Summary Judgment and Brief in Support [Doc. #48]. The remaining Defendants, all prison officials who work at Great Plains Correctional Facility (GPCF Defendants), have filed a Motion for Summary Judgment [Doc. #50]. Plaintiff has filed a Response to the Motion of the DOC Defendants (Plaintiff's Response to DOC Defendants) [Doc. #52] and

---

[1]Plaintiff was permitted to amend his original complaint, *see* Order [Doc. #41], after dismissal for failure to exhaust administrative remedies was recommended in the first Report and Recommendation [Doc. #37]. Plaintiff omitted two unexhausted claims.

a Response to the Motion for Summary Judgment of the GPCP Defendants (Plaintiff's Response to GPCF Defendants) [Doc. #53]. For the reasons set forth below, it is recommended that summary judgment be granted in favor of both the DOC Defendants and the GPCF Defendants.

**Background**

At all times relevant to this action, Plaintiff was incarcerated at Great Plains Correctional Facility (GPCF), a private prison operated by Cornell Companies, Inc. *See* Affidavit of Warden Salvatore Calbone, attached to GPCF Special Report [Doc. #26].[2] On February 4, 2004, Defendant Horace Alexander, Plaintiff's case manager, informed Plaintiff that his security classification level was being dropped from Level 4 to Level 2 because Plaintiff had exhibited a poor attitude with the staff. Amended Complaint at 2. Later that afternoon, Plaintiff received a notice that a 120-day adjustment review would be held the next morning, February 5, 2004. When Plaintiff arrived at his case manager's office for the review, however, Defendant Alexander told Plaintiff that the adjustment review had been completed the previous day and that Plaintiff's classification level had been lowered from Level 4 to Level 2. Amended Complaint at 2D. *See also* DOC Special Report [Doc. #22] Attachment 5.[3] Plaintiff prepared Request to Staff Forms and delivered one to Defendant

---

[2]On April 26, 2005, Plaintiff filed a Notice of Change of Address [Doc. #35] which indicates he has been transferred to Howard McLeod Correctional Center.

[3]The earned credit level is handwritten on the Adjustment Review form. It appears to be the numeral 2.

Tanya Vanwey and one to Defendant Travis Smith on February 6, 2004. Amended Complaint at 2D.

On February 9, 2004, Plaintiff was issued an offense report signed by Defendant Vanwey charging him with Coercion of Staff. Defendant Vanwey stated on the form that Defendant "brought me the attached Request and asked me to sign it stating he had apologized and didn't disrespect me in order to get his level back." DOC Special Report Attachment 7 at 1. The charge was apparently amended, and on February 17, 2004, Plaintiff was found guilty of Individual Disruptive Behavior. DOC Special Report Attachment 7 at 9. A second Adjustment Review form dated February 19, 2004, indicates that Plaintiff's Earned Credit Level was reduced to Level 1 effective February 6, 2004. DOC Special Report Attachment 8.

Plaintiff filed a grievance addressed to Defendant Calbone, the Warden of GPCF, challenging the 120-day adjustment review conducted by the GPCF Defendants. Plaintiff alleged that the GPCF Defendants violated his due process rights by failing to allow him to attend and participate in the review and by failing to follow DOC policy. DOC Special Report Attachment 2 at 2. Plaintiff appealed the denial of his grievance to the Director's Designee, Defendant Guilfoyle, who affirmed the decision of the reviewing authority on April 12, 2004. DOC Special Report Attachment 2 at 1.

On March 11, 2004, Plaintiff appealed his misconduct conviction to Defendant Calbone on due process grounds. DOC Special Report Attachment 9 at 1-4. On the Offender's Misconduct Appeal Form, Plaintiff marked as his grounds for appeal that he was

3

not provided a written statement of the evidence used to determine guilt, that he was not provided with a reason for the discipline imposed, that there was no evidence to support his disciplinary conviction, and that there was no staff representative to assist him. *Id.* at 1. The conviction was affirmed on March 30, 2004. *Id.* at 5. Plaintiff then appealed the misconduct conviction to the Director's Designee, Defendant Guilfoyle, who denied his appeal on April 30, 2004. *Id.* at 7.

**Plaintiff's Claims**

In his Amended Complaint, Plaintiff again seeks compensatory and punitive damages for alleged violations of his constitutional due process rights.

Plaintiff contends that Defendants violated his Fourteenth Amendment due process rights by refusing to allow Plaintiff to participate in the 120-day adjustment review and by reducing his earned credit level without having three members of the adjustment review board present during the review. Amended Complaint at 3. Plaintiff claims that Defendants Ward[4] and Guilfoyle violated his due process rights by refusing to address "the issues and clear cut evidence presented" in his appeal. Amended Complaint at 3C (Count II).

Plaintiff further contends that Defendants' "combined efforts . . . to cover up the unfounded [misconduct] report and ill actions perpetrated by Defendant Vanwey against Plaintiff" resulted in denial of due process in the disciplinary investigation and hearing.

---

[4]In Plaintiff's Response to the DOC Defendants, Plaintiff acknowledges that Defendant Ward did not personally participate in either the misconduct appeal or the grievance appeal. Plaintiff's Response to DOC Defendants at 10.

Plaintiff also alleges that he had the right under DOC policy to hand the Request to Staff form to Defendant Vanwey. Plaintiff states that Defendants Calbone and Guilfoyle also violated his due process rights by refusing to review the facts he presented in his appeals. Finally, Plaintiff contends that his due process rights were violated when his staff representative failed to attend the disciplinary hearing. Amended Complaint at 3A-3B (Count I).

**Standard of Review**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Tenth Circuit has recently reiterated how a court should review a motion for summary judgment:

> When applying this standard, [a court] view[s] the evidence and draw[s] reasonable inferences therefrom in the light most favorable to the nonmoving party. Although the movant must show the absence of a genuine issue of material fact, he or she need not negate the nonmovant's claim. Once the movant carries this burden, the nonmovant cannot rest upon his or her pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof. The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine'; an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant.

*Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (*citing Simms v. Okla. ex rel. Dept. of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999) (quotation marks, citations, and brackets omitted)).

**<u>Claims Arising from Classification Level</u>**

Plaintiff states that the GPCF Defendants violated his constitutional rights by failing to allow him to participate in the 120-day Adjustment Review. He further contends that the Adjustment Review was completed without all three of the committee members present. Finally, Plaintiff states that Defendant Guilfoyle violated his constitutional rights by refusing to address "the issues and clear cut evidence presented" in his grievance appeal. Amended Complaint at 3C.

To state a claim in a civil rights action for deprivation of due process, a plaintiff must have a constitutionally protected liberty interest created by state law. Thus, a prisoner may obtain relief for the deprivation of good-time credits, for example, if he can demonstrate that "the State's action . . . inevitably affect[ed] the duration of his sentence." *Sandin v. Conner*, 515 U.S. 472, 487 (1995).

A prisoner is not entitled to due process protection, however, for State action that will not necessarily affect the duration of his sentence. *Id.* Prisoner level classification is an example of such State action. "In Oklahoma, the decision to classify a prisoner and the corresponding right to earn good-time credits is purely discretionary and rests on a myriad of considerations." *Hudson v. Ward*, 124 Fed. Appx. 599, 602 (10th Cir. Feb. 14, 2005) (unpublished op.).[5]  *See also* Okla. Stat. tit. 57, § 138(B), (D)(4). For example, "the assignment of each prisoner to a particular class level is based upon subjective criteria, such

---

[5]Unpublished Tenth Circuit opinions are cited for their persuasive authority pursuant to Tenth Circuit Rule 36.3.

as ranking inmates on a scale ranging from "poor" to "outstanding." *Hudson* at 602. *See also* § 138(D)(1)-(4). "[T]he [ODOC's] adjustment review committee retains complete discretion to assign and reassign inmates to a particular class level[.]" *Hudson* at 602. The adjustment review committee may base a level assignment upon such subjective factors as a prisoner's ability to maintain good personal hygiene, a clean living area and a cooperative behavior toward facility staff and other inmates, as well as evaluations of work and education assignments. Okla. Stat. tit. 57, § 138(D)(3)(a)-(d). Thus, "a prisoner in Oklahoma is never guaranteed a particular classification; rather, assuming a prisoner meets all relevant criteria, he may be assigned to a class in which he can earn good-time credit." *Hudson* at 602. Accordingly, Plaintiff does not have a protected liberty interest in either maintaining a particular assigned level or in the opportunity to earn good time credits. Therefore, Plaintiff was not entitled to the protections of the Due Process Clause during the meetings of the Adjustment Review Committee responsible for demoting him to Level one.[6] Because

---

[6]Plaintiff's contention that Oklahoma law mandates his presence at meetings of the Adjustment Review committee is simply wrong. The relevant section provides:

> The policy and procedure developed by the Department of Corrections shall include provisions for adjustment review committees of not less than three (3) members for each such committee. Each committee shall consist of a classification team supervisor who shall act as chairman, the case manager for the inmate being reviewed or classified, a correctional officer or inmate counselor, and not more than two other members, if deemed necessary, determined pursuant to policy and procedure to be appropriate for the specific adjustment review committee or committees to which they are assigned. At least once every four (4) months the adjustment review committee for each inmate shall evaluate the class level status and performance of the inmate and determine whether or not the class level for the inmate should be changed.

(continued...)

7

Plaintiff did not have a protected liberty interest in his assigned level, his constitutional rights were not violated by either the original adjustments in his level or in his grievance appeal to Defendant Guilfoyle.

**Claims Arising from Disciplinary Proceeding**

Plaintiff states that his due process rights were violated when he was found guilty of individual disruptive behavior in a prison disciplinary proceeding. Petitioner was sentenced to thirty days in administrative segregation and lost 180 earned credits. *See* DOC Special Report Attachment 7.

Oklahoma inmates do possess a liberty interest in earned credits. *See Wallace v. Cody*, 951 F.2d 1170, 1172 n. 1 (10th Cir. 1991). Therefore, Oklahoma inmates are entitled to due process protection prior to the loss of those credits. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). An inmate's due process rights in the context of a prison disciplinary proceeding are, however, limited. When a prison disciplinary hearing may result in the loss of earned credits, due process requirements are met if the prisoner received: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary

---

$^6$(...continued)
Any inmate who feels aggrieved by a decision made by an adjustment review committee may utilize normal grievance procedures in effect with the Department of Corrections and in effect at the facility in which the inmate is incarcerated.

Okla. Stat. tit. 57, § 138 (F). Moreover, both Adjustment Review forms are signed by all three committee members. *See* DOC Special Report Attachments 5 and 8.

evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. *Wolff* at 563-567. In addition, "revocation of good time does not comport with the 'minimum requirements of procedural due process,' unless the findings of the disciplinary hearing officer are supported by some evidence in the record." *Superintendent, Massachusetts Correctional Institute, Walpole v. Hill*, 472 U.S. 445, 454 (1985).

But a state inmate's claim for damages allegedly arising from denial of due process in a prison disciplinary action is not cognizable under § 1983 if a favorable decision would necessarily imply the invalidity of the disciplinary conviction, unless the inmate can demonstrate that the disciplinary conviction has been invalidated. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (allegations of deceit and bias on part of decision maker necessarily imply invalidity of punishment imposed and are not cognizable under § 1983 unless disciplinary conviction was previously invalidated ).

In this case, Plaintiff has not demonstrated that his disciplinary conviction has been invalidated. Therefore, to the extent that Plaintiff's claims imply the invalidity of the outcome of the prison disciplinary conviction, his claims are barred by *Balisok*. Moreover, as discussed below, Plaintiff received the process he was due.

In the Amended Complaint, Plaintiff states that some of the evidence used to determine his guilt, specifically a memo written by Defendant Courtney recounting Plaintiff's behavior toward Defendant Vanwey, *see* DOC Special Report Attachment 7 at 6, was the product of bias and was submitted as "an inflammatory tool used to sway the

9

decision of the Disciplinary Hearing Officer." Amended Complaint at 3A. He further complains that the Disciplinary Hearing Officer did not properly consider a Witness Statement Plaintiff submitted. *Id. See also* DOC Special Report Attachment 7 at 7. This claim clearly implicates the invalidity of the disciplinary conviction and is therefore barred by *Balisok*. Moreover, the Disciplinary Hearing Officer apparently relied on the statement of the reporting officer, Defendant Vanwey, in assessing Plaintiff's guilt. The Disciplinary Hearing Officer specifically stated that Defendant Vanwey was unbiased and "had nothing to gain or profit by lying." DOC Special Report Attachment 7 at 9. The statement of Plaintiff's witness was made part of the record. DOC Special Report Attachment 7 at 7.

Both in his Amended Complaint at 3A and in his Offender's Misconduct Appeal, Plaintiff took issue with the Disciplinary Hearing Officer's statement, "All I/Ms know staff of [sic] request are to be sent by mail and not handed to staff." *Id.* Plaintiff states, "There is not such a policy nor practice in this facility nor in ODOC, precluding an inmate from hand delivering any paperwork to a member of the staff, nor is the inmate forced by practice or rule to strictly adhere to such a rule." Plaintiff's Response to DOC Defendants Ex. 10 at 3. To the extent that the disciplinary hearing officer considered the personal delivery of the Request to Staff as evidence of Individual Disruptive Behavior, this issue, too, implicates the invalidity of the disciplinary conviction and is barred.[7]

---

[7]Plaintiff's complaint in this regard appears to have some merit. The Inmate Grievance Process set forth in OP-090124 does not appear to require that requests to staff be mailed by the inmate. In fact, Section IV of the process which governs "Informal Resolution" states, "Before
(continued...)

Plaintiff also complains that the staff representative assigned to him "refused to present himself at the hearing in order to support and assist Plaintiff as required by policy, thus depriving [Plaintiff] of due process in the preparation of a proper defense." Amended Complaint at 3A. This court need not decide whether the staff representative's failure to assist Plaintiff would necessarily imply the invalidity of Plaintiff's disciplinary conviction because this allegation does not rise to the level of a due process violation. Inmates generally have no constitutional right to representation at disciplinary hearings. In *Wolff*, the Supreme Court considered the use of staff representatives, but suggested limited constitutional demands for their involvement. The Court expressly declined "to hold that inmates have a right to either retained or appointed counsel in disciplinary proceedings." *Id.* at 570; *see also Baxter v. Palmigiano*, 425 U.S. 308, 315 (1976) ("We see no reason to alter our conclusion so recently made in *Wolff* that inmates do not have a right to either retained or appointed counsel in disciplinary hearings."). Following *Wolff*, the Tenth Circuit held that an inmate's claim of ineffective assistance during a disciplinary proceeding was meritless because the minimum due process requirements do not include assistance of counsel in a

---

[7](...continued)
submitting a 'Request to Staff' the inmate/offender must try to resolve the complaint by talking with the case manager, probation or parole officer, supervising employee, or other appropriate staff member within 3 days of the incident." *See* OP-090124 (IV)(A), attached as Exhibit 6 to Warden's Affidavit, GPCF Special Report. This section suggests that inmates are encouraged to speak to relevant staff members in person in an attempt to resolve disputes. The following section states that if the complaint is not resolved, the inmate "must submit a 'Request to Staff' to the appropriate staff, generally unit staff . . ." but does not designate how it is to be submitted or prohibit hand-delivery. *See* OP-090124(IV)(B). This issue is not, however, cognizable in this action because Plaintiff's disciplinary conviction has not been invalidated.

disciplinary hearing.  *Williams v. Rice*, No. 98-1146, 1998 WL 863982, at *3 (10th Cir. Dec. 14, 1998) (unpublished op.).

The Court in *Wolff* did add, however, that a limited role may exist for staff representatives when the inmate is illiterate or otherwise unlikely to be able to collect and present evidence.  *Wolff*, 418 U.S. at 570.  The Court stated:

> Where an illiterate inmate is involved, however, or whether [sic] the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff.  We need not pursue the matter further here, however, for there is no claim that the named respondent, . . ., is within the class of inmates entitled to advice or help from others in the course of a prison disciplinary hearing.

*Id.*  In the present case, there is no assertion that Plaintiff is illiterate.  Moreover, the issues presented at the disciplinary hearing were not so complex as to require the assistance of a staff representative.  Finally, the investigating officer collected and submitted evidence in Plaintiff's defense.

In his Response to DOC Defendants, Plaintiff also contends that the disciplinary charge against him was improperly amended and that he was not given notice of the amendment twenty-four hours before the disciplinary hearing, as required by DOC policy.  Just when the charges were amended is unclear.  In his Response to DOC Defendants, at 3, Plaintiff states that he "was never given any record in the form demanded by policy (OP-060125 I.H. 'Amendment of Rule Violation')."  DOC policy, attached as Exhibit 5 to Plaintiff's Response to DOC Defendants, does state that a "charge may be amended by the

use of 'Amendment of Rule Violation'" and that the "inmate will be notified and offered an opportunity for 24 hours to prepare, if the hearing is already scheduled to be conducted within 24 hours of service of the amended disciplinary charge." *Id.* On February 9, 2004, Plaintiff acknowledged receipt of a Department of Corrections Offense Report by signing and dating the form. *Id.* Ex. 4. On that form, "Coercion of Staff" is marked through and "Individual Disruptive Behavior" is written below. This evidence suggests that Plaintiff knew the charge had been amended on the date he signed the form.[8] Plaintiff contends, however, that the Department of Corrections Offense Report form which he signed had not been "'doctored'" to read "Individual Disruptive Behavior." Plaintiff's Response to DOC Defendants at 3. For purposes of deciding Defendants' Motions, it is assumed that Plaintiff did not receive notice of the amended charge before his disciplinary hearing was held. It is further assumed that this allegation does not necessarily imply the invalidity of the disciplinary conviction. The alleged lapse on the part of prison officials in failing to follow DOC policy in amending the charges against Plaintiff did not, however, rise to the level of a due process violation. The purpose of the 24-hour notice requirement is to afford an inmate the opportunity to prepare a defense. The underlying facts upon which the disciplinary charge was based was not changed when the charge was amended, and Plaintiff was well-aware of the accusations upon which the charge was based. He was not, therefore, prejudiced in his ability to present a defense.

---

[8]Plaintiff's disciplinary hearing was held eight days later on February 17, 2004.

In sum, most of Plaintiff's allegations regarding due process violations in his prison disciplinary conviction are premature and therefore barred by *Balisok*. Moreover, Plaintiff's claims are without merit because he received the process to which he was due. On February 9, 2004, Plaintiff was provided with a copy of the misconduct report. GPCF Defendants' Motion for Summary Judgment Ex. 3. A witness statement in support of Plaintiff's defense was procured by the investigator, Cpl. R. Stewart. DOC Special Report Attachment 7 at 7. On the Disciplinary Hearing Report, the hearing officer made a written statement as to the evidence relied on to reach the decision and the basis for the discipline imposed. *Id.* at 9. Finally, the statement of the reporting officer satisfied the requirement that the disciplinary hearing officer's decision be supported by some evidence.

In response to Plaintiff's Disciplinary Appeal, Defendant Guilfoyle stated that she had reviewed all documents related to Plaintiff's appeal. She affirmed the decision of the disciplinary hearing officer because the decision was based on sufficient evidence and because all procedures were followed. DOC Special Report Att. 9 at 7.

It is recommended that summary judgment be entered in favor of all Defendants on this claim. Most, if not all, of Plaintiff's due process claims are not cognizable in this § 1983 action. Additionally, Plaintiff was afforded the process to which he was due.

## **RECOMMENDATION**

It is recommended that the DOC Defendants' Motion [Doc. #48] and the GPCF Defendants' Motion [Doc. #50] be granted and that summary judgment be entered in favor of all Defendants.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any such objections must be filed with the Clerk of the District Court by March  13th , 2006. *See* LCvR72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this  21st  day of February, 2006.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE